UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| BEVERLY D. HUNT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 4:18-cv-01109-SGC |
| | ) |
| SOCIAL SECURITY | ) |
| ADMINISTRATION, Commissioner, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**[1]

The plaintiff, Beverly D. Hunt, filed this matter pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of the Commissioner of Social Security ordering the offset of disability benefits due to a lump-sum workers' compensation settlement. (Doc. 1). The plaintiff timely pursued and exhausted her administrative remedies, and the Commissioner's decision is ripe for review. For the reasons explained below, the Commissioner's decision is due to be reversed and remanded to recalculate the offset.

**I.     BACKGROUND**

The plaintiff injured her back while working at Wal-Mart in 2006. (R. 182). The plaintiff filed a workers' compensation claim in the Circuit Court of Marshall

---

[1] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 14).

County, Alabama, in which she was represented by G. Douglas Benson. (R. 58, 68). Benson negotiated a $30,000 lump-sum payment to settle the workers' compensation claim during mediation. (R. 210). The Circuit Court set the settlement hearing for August 21, 2008. (*See* R. 58, 64-68). Because Benson had another hearing set for that date, he arranged for another attorney, Parker Edminston, to cover the settlement hearing. (R. 58, 68, 218). Although Benson regularly handled workers' compensation and Social Security disability cases, Edminston did not. (R. 218, 221).

Defense counsel prepared the settlement agreement ("Settlement Agreement") and a proposed order for the settlement hearing with the Circuit Court. (R. 58, 68, 218-19). Immediately following the August 21, 2008 settlement hearing, the Circuit Court entered an order approving the Settlement Agreement. (R. 64-67). Neither the Settlement Agreement nor the Circuit Court's order included any language specifying that the lump-sum settlement would be amortized over the plaintiff's lifetime. (*Id.*). Benson apparently did not review the Circuit Court's Order or the Settlement Agreement until 2011, as explained below.

Meanwhile, in May 2007, the plaintiff had also filed for Social Security Disability Insurance Benefits ("DIB"). (*See* R. 176). After the denial of DIB at the initial level, the plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*See id.*). During the hearing at which the plaintiff was represented by a

non-attorney, Patrick Potter,[2] the ALJ heard testimony that the plaintiff had suffered herniated discs at L4, L5, and S1, causing debilitating pain. (R. 182). Initial conservative treatment was unsuccessful, and the plaintiff eventually underwent posterior lumbar interbody fusion surgery. (R. 182-91). The plaintiff testified the surgery had not alleviated her back pain and that her daily activities were extremely limited, even with opioid pain medication and muscle relaxers, which she took multiple times each day. (*Id.*). After hearing this evidence, the ALJ found the plaintiff's testimony to be credible and supported by the medical records; he described the plaintiff as suffering from "failed back syndrome." (R. 193). At the close of the hearing, the ALJ issued a fully favorable bench ruling, finding the plaintiff was disabled. (*Id.* at 193-94).

On January 24, 2011, the Social Security Administration ("SSA") sent the plaintiff a letter explaining that, due to the workers' compensation settlement, the amount of her monthly DIB would be reduced from $625 to $104. (R. 17-19; *see* R. 21, 74). At this point, the plaintiff got in touch with Benson, and he reviewed the Settlement Agreement and the Circuit Court's order for the first time. (R. 219). Upon this review, Benson realized the Settlement Agreement did not include

---

[2] Benson represented the plaintiff in her DIB claim, first formally appearing in March 2009, after her Social Security claim had been pending for some time. (R. 149). By the time of the ALJ hearing, Benson was disbarred. (*See* R. 14). Benson was subsequently readmitted to the bar in 2015. (R. 228).

language amortizing the lump-sum payment over the plaintiff's lifetime. (R. 226). Because Benson was not licensed to practice law at the time, the plaintiff hired a new lawyer, who is also her counsel in the instant appeal. (R. 227).

On February 24, 2011, the plaintiff filed an unopposed motion for relief from judgment with the Circuit Court. (R. 73-74). In addition to including the facts concerning the settlement hearing and the negotiation of the Settlement Agreement, the motion explained: (1) the parties intended to include language amortizing the lump-sum workers' compensation settlement over the Plaintiff's lifetime; (2) the amortization language was not included in the Settlement Agreement the defendant prepared. (*Id.*). The motion asked the court to relieve the plaintiff "from the onerous effects of the" original order adopting the Settlement Agreement, "by amending its order to accurately reflect the agreement of the parties." (*Id.* at 74).

On April 7, 2011, the Circuit Court granted the plaintiff's motion for relief from judgment and entered an amended order ("Amended Order"), explaining the lump-sum the plaintiff would receive, after deducting attorney fees and expenses, was $22,896.77. (R. 76). The Amended Order also incorporated the following language:

> The $22,896.77 to be paid under this settlement shall be paid without commutation of interest and shall represent the compromise agreement that the employee's life expectancy of 2,429.96 weeks forward from the date of the original agreement dated August 21, 2008 and that the settlement herein reached represents the payment of, to wit: $9.42 per week over the 2,429.96 week period of life expectancy of the employee.

4

> Plaintiff was, at the time of the settlement on August 21, 2008, a 34 year old female. The Alabama Standard Mortality Table predicts that a 34 year old female will have 46.73 years to live. Fifty-two [] weeks per year at 46.73 years equals 2429.96 weeks.

(R. 76). After reviewing the Circuit Court's Amended Order, the SSA denied the plaintiff's request for reconsideration and stated it would continue to use the Circuit Court's original order to calculate her DIB. (R. 52-54, 88-89).

The plaintiff requested a hearing before an ALJ, which took place on July 21, 2016. (R. 93, 197-234). Benson and the plaintiff testified as witnesses during the hearing. (R. 195-234). The ALJ affirmed the agency's denial of reconsideration in a decision issued on October 26, 2016; this decision is the subject of the instant appeal. (R. 13-16). In general terms, the ALJ concluded: (1) applying the terms of the Amended Order would circumvent the offset provisions of 42 U.S.C. § 424(a); and (2) under Social Security Ruling ("SSR") 97-3, the terms of the Amended Order were not binding on the SSA. (R. 15-16). After exhausting her administrative remedies, the instant appeal followed.

## II. STANDARD OF REVIEW

A court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v.*

*Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). A court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, a court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if a court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

No decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir.

1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.  DISCUSSION

This case requires interpretation of 42 U.S.C. § 424(a) and SSR 97-3. The undersigned is aware of precisely one case interpreting the interplay between these federal authorities and Alabama workers' compensation law: *Sellers v. Apfel*, No. 00-0435, 2001 WL 228181 (S.D. Ala. Mar. 1, 2001). The operative facts of *Sellers* align with the circumstances presented in the instant case.[3] In *Sellers,* the plaintiff appealed from the Commissioner's decision to offset DIB due to a lump-sum workers' compensation settlement. The 1991 judgment approving the workers' compensation settlement did not amortize the proceeds over the plaintiff's life. In 1994, the plaintiff was awarded DIB, which the SSA offset due to the workers' compensation lump-sum settlement. The plaintiff challenged this decision administratively. While the administrative appeal was pending, on October 25, 1996, the Alabama court presiding over the workers' compensation case entered a *nunc pro tunc* order amending its 1991 judgment. The amended judgment specified that the plaintiff's lump-sum settlement for permanent disability was amortized over

---

[3] In *Sellers*, the workers' compensation settlement was for a share of attorney's fees, since the plaintiff there had obtained a judgment against a third-party tortfeasor which "exceed[ed] the compensation disability of the defendant." 2018 WL 228282 at *1. This distinction is irrelevant here because the court in *Sellers* treated the settlement proceeds as constituting compensation for disability. *Id.* at *12.

7

the term of the plaintiff's life. The ALJ in *Sellers* found the amended judgment was not binding and that the offset based on the original judgment was appropriate under SSR 97-3. (*Id.* at *1-*9; *see id.* at *13).

On appeal from the Commissioner's decision, *Sellers'* explained:

> Section 224 of the Social Security Act, 42 U.S.C. § 424a, provides that where an individual is receiving both state workers' compensation benefits and Social Security disability insurance benefits on account of a disability, his Social Security benefits "shall be reduced" by that amount necessary to ensure that the combination of these two sources of benefits does not exceed 80 percent of the individual's average pre-disability earnings. 42 U.S.C. § 424a(a).
>
> . . . .
>
> "The offset statute reflects Congress's concern that recovery of overlapping worker's compensation and social security disability benefits decreases an injured worker's incentive to seek rehabilitation and further employment." *Olson ex rel. Estate of Olson v. Apfel,* 170 F.3d 820, 822 (8th Cir. 1999), citing *Richardson v. Belcher,* 404 U.S. 78, 82–83, (1971); *see also Iglinsky v. Richardson,* 433 F.2d 405, 407 (5th Cir. 1970) (noting that the purpose of this provision is to "ensure that a claimant who was also entitled to benefits under a state compensation program did not, by virtue of his right to payments from two sources, receive excessive compensation for the same injury."); *Wilson v. Apfel,* 81 F.Supp.2d 649, 652 (W.D. Va. 2000) ("The purpose of this provision is to ensure that a claimant does not receive double benefits for the same injury, reducing his or her incentive to return to work."); *Wal–Mart Stores, Inc. v. Bratton,* 678 So. 2d 1071, 1075 (Ala. Civ. App. 1995) ("Social Security benefits must be offset by the amount of workmen's compensation benefits available in order to prevent a windfall to the individual.... Neither federal nor state law seeks to provide benefits attractive enough to reward an individual for his physical incapacity or to discourage him from attempting to regain the ability to work if he or she is able to do so."), *judgment rev'd Ex parte Bratton,* 678 So. 2d 1079 (Ala. 1996).

> Periodic benefits subject to offset under § 424a(a) include lump sum awards received as a substitute for periodic payments. 42 U.S.C. § 424a(b). Section 424a(b) provides:
>
>> If any periodic benefit for a total or partial disability under a law or plan described in subsection (a)(2) of this section is payable on other than a monthly basis (excluding a benefit payable as a lump sum except to the extent that it is a commutation of, or substitute for, periodic payments), the reduction under this section shall be made at such time or times and in such amounts as the Commissioner of Social Security finds will approximate as nearly as practicable the reduction prescribed by subsection (a) of this section.
>
> *Id.* Thus, this section instructs the Commissioner to treat a lump sum workers' compensation award that is paid as a substitute for periodic payments in such a way as to approximate as nearly as practicable the setoff that would have occurred had the payment been made periodically rather than in a lump sum. *Id.; see Bubnis v. Apfel,* 150 F.3d 177, 181 (2nd Cir. 1998) ("[W]e will uphold the Commissioner's determination of the offset rate on Bubnis's lump-sum settlement award as long as the rate can reasonably be said to approximate most closely the rate at which Bubnis's monthly disability benefits would have been reduced had the workers' compensation benefits been paid monthly.").

*Sellers*, 2001 WL 228181, at *10-*11 (section numbers and parallel citations omitted).

When confronted with whether to apply the offset according to an original or amended judgment in a workers' compensation case, SSR 97-3 concludes with the following guidance:

> SSA is not necessarily bound by the terms of a second, or amended, stipulation in determining whether and by what rate a disabled worker's Social Security disability insurance benefits should be offset on account of a WC lump sum payment. SSA will evaluate both the original and

9

amended stipulations and disregard any language which has the effect of altering the terms in the original lump-sum settlement where the terms in the amended document are illusory or conflict with the terms of the first stipulation concerning the actual intent of the parties, and where, as here, the terms in the amended document would have the effect of circumventing the WC offset provisions of section 224 of the Act. To give effect to such illusory terms would frustrate Congress' intent to avoid duplicate benefits.

SSR 97-3, 1997 WL 620432 (Oct. 3, 1997).

Having set the table with regard to the federal authority, *Sellers* determined the ALJ had erred by failing "to look to Alabama law 'to inform the nature of the workers' compensation payments, particularly whether the benefits were for 'total or partial disability . . . under a workmen's compensation law or plan.'" *Id.* at *12 (quoting *Krysztoforski v. Chater,* 55 F.3d 857, 859 (3rd Cir. 1995).

The Alabama Workmen's Compensation Act classifies disability compensation in four categories: (1) temporary total disability; (2) temporary partial disability; (3) permanent partial disability; and (4) permanent total disability. ALA. CODE § 25-5-57(a); *see Sellers*, 2018 WL 228181 at *14. The structure of any workers' compensation award under Alabama law depends on which category a claimant's disability falls under; for permanent total disability, compensation is based on the claimant's life expectancy. *Burden v. Huckaba,* 708 So. 2d 199, 203-04 (Ala. Civ. App. 1997) (citing *Ex parte St. Regis Corp.,* 535 So. 2d 160 (Ala. 1988)); *see Sellers*, 2001 WL 228181, at *14. Alabama law defines permanent total disability as "any physical injury or mental impairment resulting from an accident,

which injury or impairment permanently and totally incapacitates the employee from working at and being retrained for gainful employment." ALA. CODE § 25-5-57(a)(4)(d).

On this basis, *Sellers* reasoned:

> Had the ALJ taken a look at the compensation provisions of Alabama's Workmen's Compensation Act concurrent with his review of the 1991 judgment and the 1996 Order *Nunc Pro Tunc,* it is clear to the undersigned that he would have realized that the 1996 order was simply an elucidation of the clear intent of the parties in 1991 in agreeing that "[t]he sum of $49,757.88, ... [was] the defendant's share of the attorney's fee on the compensation credit for plaintiff's *permanent disability* . . . ." In other words, when Alabama's Workmen's Compensation Act is considered in conjunction with these two documents it becomes apparent that the only way the parties could have come up with the settlement number for plaintiff's permanent disability in the 1991 judgment was by factoring in plaintiff's life expectancy since that is the definition of permanent total disability under Alabama law.

*Sellers*, 2001 WL 228181, at *14. Under these circumstances, the court concluded the intent of the parties in 1991 was clear and the Commissioner should have considered the lump-sum settlement as being amortized over the plaintiff's lifetime. *Id.*[4] *Sellers* further held that, under these circumstances, SSR 97-3 did not apply. *Id.* at *15. Accordingly, the court reversed and remanded the case to the

---

[4] The conclusion in *Sellers* was bolstered by the underlying settlement figures, which allowed the court to confidently determine via arithmetic that the lump-sum settlement was calculated by amortizing payments over the plaintiff's life. *Sellers*, 2001 WL 228181, at *14. While no such mathematical certainty is present in the instant case, the conclusion here is the same because, as explained below: (1) the undisputed evidence shows the plaintiff was permanently and totally disabled under Alabama workers' compensation law; and (2) there is not substantial evidence to show the parties did not intend to amortize the lump-sum settlement proceeds.

11

Commissioner with instructions to apply the offset rate specified in the Circuit Court's 1996 amended judgment. (*Id.*).

Here, the plaintiff discussed *Sellers* during the hearing and provided a copy of the case for the ALJ's consideration. However, neither the ALJ's decision nor the Commissioner's briefing mention the case. Instead, the ALJ applied SSR 97-3 and concluded that enforcing the terms of the Amended Order would have the effect of circumventing the terms of 42 U.S.C. § 424(a). (R. 13-16). As explained below, SSR 97-3 does not apply to this case.

The evidence in the record shows: (1) the plaintiff was totally permanently disabled under ALA. CODE § 25-5-57(a)(4)(d); and (2) the parties intended to include language in the Settlement Agreement specifying the lump-sum was amortized over the plaintiff's lifetime. Regarding the plaintiff's level of disability, the record includes an April 30, 2008 vocational evaluation completed by Patsy V. Bramlett. (R. 126-133). Ms. Bramlett's evaluation assigned a Vocational Disability Rating of 100% and opined the plaintiff "will not be a feasible candidate for return to competitive employment" in the future. (R. 132). Also appearing in the record is a letter from Benson to defense counsel in the workers' compensation case, opining the plaintiff was totally disabled. (R. 144-45). The plaintiff's testimony during the 2010 ALJ hearing in her DIB claim, which the ALJ found credible, also supports this conclusion. The same is true of the plaintiff's testimony during the 2016 ALJ

hearing concerning the offset. (R. 204-08). Likewise, the plaintiff testified during the 2016 ALJ hearing that during the course of the mediation, Benson told the mediator and opposing counsel he was pursuing "permanent total disability benefits." (R. 209). Benson testified he always considered the plaintiff to be permanently and totally disabled. (R. 223). There is no evidence in the record indicating the plaintiff was anything but permanently and totally disabled under ALA. CODE § 25-5-57(a)(4)(d).

As to the parties' intent, the record includes the testimony of Benson and the plaintiff that the parties intended the Settlement Agreement to include language specifying the lump-sum settlement was amortized over the plaintiff's life. During the 2016 hearing, the ALJ heard Benson testify that: (1) during the mediation of the workers' compensation claim, he informed defense counsel the plaintiff was also pursuing a DIB claim; (2) the Settlement Agreement would need to include language amortizing the settlement proceeds over the plaintiff's lifetime; and (3) defense counsel agreed to the request. (R. 217; *see also* R. 68). The plaintiff testified to the same facts. (R. 209). Benson explained he had handled "a lot" of workers' compensation cases during his career and he "always" included the life-long amortization language in settlement agreements if there was any chance the plaintiff would apply for DIB. (R. 221).

13

During his testimony at the 2016 ALJ hearing, Benson could not remember whether the plaintiff had already applied for DIB at the time of the workers' compensation mediation, but he testified: "we knew we were going to." (R. 221-22). Benson further testified that: (1) defense counsel agreed to draft the Settlement Agreement and present it at the settlement hearing; (2) defense counsel in workers' compensation cases "always" prepared any settlement agreements; (3) while he had not previously worked with the defense attorney in the workers' compensation case, he had handled cases with other attorneys from the defense attorney's firm; (4) lawyers from the defense attorney's firm had "always" included the amortization language when requested; and (5) he would not have agreed to a settlement that did not include the amortization language. (R. 218-23). Finally, Benson testified the affidavit he executed in support of the motion for relief from judgment in the Circuit Court reflected the parties' true intention to include the amortization language in the Settlement Agreement. (R. 220; *see* R. 68).

The ALJ's opinion does not address the uncontroverted evidence that the plaintiff was totally and permanently disabled under ALA. CODE § 25-5-57(a)(4)(d). (R. 13-16). As to the intent of the parties, it appears the ALJ's decision is at least partially based on criticisms of Benson and/or his implicit conclusion that Benson was not a credible witness. (*See* R. 13 (criticizing Benson's failure to review the

Settlement Agreement or the Circuit Court's original order);[5] R. 14 (noting that although Benson averred he represented the plaintiff in her DIB claim at the time he was negotiating the settlement in the workers' compensation case, he did not submit an Appointment of Representative form to SSA until six months after the Circuit Court approved the Settlement Agreement); R. 15 (same); *id.* (same)).

To the extent the ALJ relied on Benson's apparent failure to review the Settlement Agreement or the Circuit Court's order contemporaneously with their entry (R. 13), Benson's oversight does not does not refute the unrebutted evidence regarding the parties' intention to include the amortization language. *See Sellers*, 2001 WL 228181 (taking no exception to five-year delay between the state court's original final judgment and the amended order). To the extent the ALJ relied on the fact that Benson did not formally appear in the plaintiff's DIB claim until after the Circuit Court approved the Settlement Agreement, this does not constitute substantial evidence sufficient to discount: (1) Benson's testimony that the plaintiff either had filed, or was planning to file for DIB; (2) the plaintiff's testimony that she heard Benson tell the mediator and opposing counsel she was pursuing DIB; and (3) that the plaintiff's DIB claim had in fact been pending for more than a year when the Circuit Court approved the Settlement Agreement.

---

[5] "One would think that given the fact than an unassociated attorney acted in his stead, Mr. Benson would have reviewed the final product before having the documents filed away and the case considered closed." (R. 13).

15

In light of the foregoing factual findings, the Commissioner's decision applied incorrect legal standards. Because the plaintiff was permanently and totally disabled under ALA. CODE § 25-5-57(a)(4)(d), the Amended Order "in no way altered the terms of the [2008] judgment; rather, that order simply served to clarify the intent of the parties in reaching the lump-sum settlement." *Sellers*, 2001 WL 228181, at *15. Accordingly, SSA 97-3 does not apply to the facts of this case, and its application here is reversible error. *Id.*

## IV. CONCLUSION

Upon review of the administrative record and the briefs of the parties, the court finds the Commissioner's decision is not supported by substantial evidence and did not apply the correct legal standards. Accordingly, the Commissioner's decision is due to be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner will be instructed to redetermine the offset by applying the weekly amortized rate of $9.42 specified in the April 7, 2011 Amended Order. (R. 76); *see Sellers*, 2001 WL 228181, at *15.

**DONE** this 30th day of September, 2019.

*[signature]*
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE